UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS HORACE LAPPIN,

    Petitioner,

v.

KENNETH ROMANOWSKI,

    Respondent.
_____/

Case No. 14-cv-14368

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
DAVID R. GRAND

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

## I. INTRODUCTION

Thomas H. Lappin, ("Petitioner"), confined at the Macomb Correctional Facility in New Haven, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed through his attorney Frank D. Eaman, petitioner challenges his plea conviction out of the St. Clair County Circuit Court for second-degree murder, in violation of Mich. Comp. Laws § 750.317, and possession of a firearm during the commission of a felony, in violation of Mich. Comp. Laws § 750.227b. For the reasons stated below, the petition for a writ of habeas corpus is **DENIED.**

## II. BACKGROUND

Officers Doan and Gross testified that they responded to a phone call from petitioner's step-father who was concerned about the physical well-being of petitioner. The officers went to petitioner's home where they found the lifeless body of petitioner's girlfriend on the floor under a comforter. (PE Tr. 2/7/12, pp. 7–20). Dr. Daniel Spitz examined the victim and found injuries to the head, eyes, torso, and extremities and that the victim died as a result of a gunshot wound within the mouth. (PE Tr. 2/10/12, pp. 11–12, 15). Spitz also found that the body had been moved from the bed to where it was found on the floor and had been dead for several days prior to his examination. (*Id.* at 13–15).

David Collins testified that he had known petitioner for 5 or 6 months prior to petitioner contacting him to plan a trip. Collins and petitioner took the trip two days before the police found the body of petitioner's girlfriend in his home. (PE Tr. 2/7/2012, pp. 78, 92). Originally the trip was planned for Florida, but after stopping in Tennessee, Collins convinced petitioner to return to Michigan when petitioner told him of an altercation between petitioner and his girlfriend, which resulted in her death. (*Id.* at 101–103). Collins testified that petitioner told him that he fired 10 or 12 shots to scare his girlfriend and then laid the gun on a coffee table, where petitioner's girlfriend picked it up and committed suicide. (*Id.* at 96–99). Petitioner also told

Collins that he left the body in the house and "wanted to go back to the house and see if the gun that she used to commit suicide was still in her hand." (*Id.* at 101, 108–09).

On the way back to Michigan, the men got into an argument over drugs. Petitioner attacked Collins, who feared for his life and the safety of his family based on things said by petitioner during the trip to Tennessee and back. Collins contacted his sister, who then contacted the police. (*Id.* at 111).

On September 14, 2012, the prosecution offered petitioner a plea deal for second-degree murder. (Tr. 9/14/12, p. 7). The prosecution and defense counsel had been discussing possible plea deals since July 2012. Petitioner rejected the plea offer, disregarding the advice given by his attorneys. Petitioner requested more time to think about it and claimed that less than 24 hours was not enough time to make a decision without feeling pressured. (*Id.* at 15). Petitioner then asked for "one more night to "sleep" on it. (*Id.* at 20).

Five days later, on September 19, 2012, the parties reappeared before the trial court, at the request of defense counsel. In the interim, petitioner's attorneys provided petitioner with 400 pages of discovery materials and additional time to reconsider the plea offer. The prosecution placed the plea offer on the record, reducing the charge from first degree murder, carrying a natural life sentence, to second degree murder, with a guideline range between 13–21 years. Petitioner again

indicated that he would not accept the plea. (Tr. 9/19/12, p. 11). Petitioner claimed that he needed time to read the discovery materials. (*Id*. at 13). The trial court noted that at the last hearing, five days prior, petitioner only needed twenty-four hours to consider the plea deal. (*Id*. at 14.; *see also* Tr. 9/14/12, p. 16). The trial court concluded the hearing and left the trial as scheduled for September 25, 2012. (Tr. 9/19/12, p. 15).

On the day of trial, petitioner accepted the plea deal. (Tr. 9/25/12, p. 5). Petitioner had enough time to discuss the plea deal with his attorney and was satisfied with her advice. (*Id.* at 8). Petitioner understood all the rights that he waived by pleading guilty. Petitioner indicated he was pleading guilty voluntarily, by his choice. (*Id.* at 8–10).

Petitioner was originally charged with first-degree murder and felony-firearm. Petitioner pleaded guilty to a reduced charge of second-degree murder and guilty as charged to the felony-firearm charge, in exchange for dismissal of the first-degree murder charge. Petitioner was sentenced to twenty-two years and six months to forty years imprisonment for second-degree murder and two years imprisonment for the felony-firearm conviction.

Petitioner moved to withdraw his guilty plea in the trial court, which was denied. *People v. Lappin,* No. W-12-000360-FC (St. Clair County Circuit Court,

March 19, 2013). The Michigan appellate courts denied petitioner leave to appeal. *People v. Lappin,* No. 316088 (Mich.Ct.App. June 25, 2013); *lv. den.* 495 Mich. 947, 843 N.W.2d 511 (2014).

Petitioner now seeks a writ of habeas corpus on the following grounds:

I. The defendant's guilty plea on the day of trial, which occurred because of pressure from his unprepared trial attorney to plead guilty, was an involuntary plea that violated his rights to Due Process of the Law under the Fifth and Fourteenth Amendments, and also violated his Sixth Amendment Rights because it resulted from ineffective assistance of counsel.

II. The decisions of the state courts denying withdrawal of the petitioner's plea of guilty on the federal constitutional grounds stated in this petition were contrary to, and involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court.

### III.  STANDARD OF REVIEW

Title 28, Section 2254(d) of the United States Code, as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

> Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) ((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7

(1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

The trial court issued an extensive opinion denying petitioner's motion to withdraw his plea. The Michigan Court of Appeals then issued a form order denying petitioner's claim on the merits. The Michigan Supreme Court subsequently denied petitioner leave to appeal in a standard form order.

In reviewing a claim under the AEDPA's deferential standard of review, this Court must review "the last state court to issue a reasoned opinion on the issue." *Hoffner v. Bradshaw,* 622 F. 3d 487, 505 (6th Cir. 2010) (quoting *Payne v. Bell*, 418

F.3d 644, 660 (6th Cir. 2005)); *see also Barrientes v. Johnson*, 221 F.3d 741, 779 (5th Cir. 2000) ("When the last state adjudication of the claim is silent or ambiguous, the federal court should look through to the last clear state decision on the matter.") (internal quotation marks omitted)). Because the Michigan appellate courts denied petitioner's application for leave to appeal in an unexplained one-sentence order, this Court must "look through" these decisions to the trial court's opinion denying petitioner's motion to withdraw his plea, the last state court to issue a reasoned opinion, and determine whether that court's adjudication of petitioner's claims was "contrary to," or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See Hamilton v. Jackson,* 416 Fed. App'x. 501, 505 (6th Cir. 2011); *see also Miller v. Stovall,* 573 F. Supp. 2d 964, 976 (E.D. Mich. 2008).

## IV. ANALYSIS

Petitioner claims that he should have been permitted to withdraw his guilty plea because he was coerced into pleading guilty by his trial attorney and that he is innocent of the charges. Petitioner claims that he was coerced into entering into a plea as a result of counsel not being prepared for trial and the possibility of facing life in prison, if convicted.

Initially, the Court observes that petitioner has no federal constitutional right

to withdraw his guilty plea. *See Hynes v. Birkett,* 526 Fed. App'x. 515, 521 (6th Cir. 2013). Unless a petitioner's guilty plea otherwise violated a clearly-established constitutional right, whether to allow the withdrawal of a habeas petitioner's guilty plea is discretionary with the state trial court. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 748 (E.D. Mich. 2005).

A guilty plea that is entered in state court must be voluntarily and intelligently made. *See Shanks,* 387 F. Supp. 2d at 749; *Doyle v. Scutt,* 347 F. Supp. 2d 474, 482 (E.D. Mich. 2004) (both citing *Boykin v. Alabama,* 395 U.S. 238, 242 (1969)). In order for a plea of guilty to be voluntarily and intelligently made, the defendant must be aware of the "relevant circumstances and likely consequences" of his plea. *Hart v. Marion Correctional Institution*, 927 F. 2d 256, 257 (6th Cir. 1991). The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he or she is pleading guilty. *King v. Dutton*, 17 F. 3d 151, 154 (6th Cir. 1994). When a petitioner brings a federal habeas petition challenging his plea of guilty, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. *Garcia v. Johnson*, 991 F. 2d 324, 326 (6th Cir. 1993). The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. The petitioner must overcome a heavy burden if the

federal court is to overturn these findings by the state court. *Id.*

It is only when the consensual character of a guilty plea is called into question that the validity of a guilty plea may be impaired. *Mabry v. Johnson*, 467 U.S. 504, 508–09 (1984). A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his or her own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (i.e., bribes). *Id.*

Petitioner argues that he was coerced into pleading guilty by his trial counsel who was unprepared to proceed to trial, and who told him that the judge would retaliate against him for using his right to a trial by sentencing him more harshly.

Petitioner's claim that he was coerced into pleading guilty is defeated by the fact that petitioner stated on the record at the plea hearing that no threats or coercion had been made to get him to plead guilty and that he was pleading freely and voluntarily. Petitioner's bare claim that he was coerced into pleading guilty is insufficient to overcome the presumption of verity which attaches to petitioner's statements during the plea colloquy, in which he denied that any threats had been

used to get him to enter his plea. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d at 750–51. Moreover, the Sixth Circuit has noted that "[w]here a defendant is aware of the condition or reason for a plea withdrawal, at the time the guilty plea is entered, a case for withdrawal is weaker." *United States v. Spencer,* 836 F. 2d 236, 239 (6th Cir. 1987). Because petitioner knew about this alleged coercion at the time that he entered his plea, his delay in bringing this alleged coercion to the attention of the trial court judge undermines the credibility of his claim that he was coerced into pleading guilty. *See United States v. Ford,* 15 Fed. App'x. 303, 309 (6th Cir. 2001). Contrary to petitioner's assertion, petitioner did not inform the judge at sentencing that he had been forced into pleading guilty by an unprepared trial counsel, nor did he even move to withdraw his plea when given the opportunity at that time.

In fact, trial counsel filed a sentencing memorandum and was ready to proceed when another attorney appeared before the court to explore the possibility of a plea withdraw. When asked if trial counsel planned to withdraw from the case, both counsel and petitioner answered, "No." The other attorney indicated that he did not intend to file an appearance at that time, nor was he acting as co-counsel. He was merely exploring the repercussions in connection with withdrawing the plea. As a result, the trial court found that trial counsel was the only counsel of record, the motion to withdraw the plea was not properly before the court, and allowed

petitioner's trial counsel to proceed with the sentencing in accordance with the permission given by petitioner. (Tr. 11/5/2012, pp. 4–8). Furthermore, petitioner adjourned the trial date four times prior to entering his plea on the day of trial. At no time did he move to adjourn his fifth trial date or indicate that he did not want to proceed with sentencing on the plea that had been entered.

Petitioner freely and voluntarily pleaded guilty to the charges. He was advised of the maximum penalties for the charges and the rights that he would be waiving by pleading guilty. He was also advised of the terms of the plea agreement and acknowledged that this was the complete terms of the agreement. In response to the trial court's questions, petitioner denied that any other promises had been made to get him to plead guilty.

Petitioner has presented no extrinsic evidence, either to the state courts, or to this Court, to substantiate his claim that his plea was made as the result of threats or duress from his trial counsel, or that counsel was unprepared to proceed to trial, so as to justify vacating his plea. *See Spencer,* 836 F. 2d at 240–41.

Petitioner further contends that he should be permitted to withdraw his guilty plea because he is actually innocent of the murder.

A solemn declaration of guilt by the defendant carries a presumption of truthfulness. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*,

426 U.S. 637, 648 (1976). "[S]ome courts have held that the absence of a defendant's vigorous and repeated protestations of innocence support the denial of a motion to withdraw a guilty plea." *United States v. Baez,* 87 F. 3d 805, 809 (6th Cir. 1996). When a criminal defendant agrees with the factual basis that supports his or her guilty plea, any subsequent statements that he or she is not guilty is not "the 'vigorous and repeated protestations of innocence' that would support a motion to withdraw a guilty plea." *United States v. Osborne*, 565 F. Supp. 2d 927, 934 (E.D. Tenn. 2008) (quoting *United States v. Dixon*, 479 F.3d 431, 437 (6th Cir. 2007) (quoting *Baez*, 87 F. 3d at 809)). Furthermore, a federal habeas court reviewing a belated claim of innocence which contradicts a prior, valid guilty plea must draw all permissible inferences in favor of the prosecution and against the petitioner. *See Ferrer v. Superintendent*, 628 F. Supp. 2d 294, 308 (N.D.N.Y. 2008); *see also Garrison v. Elo,* 156 F. Supp. 2d 815, 829 (E.D. Mich. 2001) (petitioner's "admissions of factual guilt are entitled to great weight").

      Petitioner clearly made out a factual basis for the charges at the plea hearing and indicated that he was satisfied with counsel's representation (Tr. 9/25/2012, pp. 8, 12). When confronted with the option to proceed with trial counsel at sentencing, petitioner clearly indicated on the record that he did not want counsel to withdraw from representation. At no time during the plea or sentencing hearings did

petitioner state on the record that he was innocent and would rather withdraw his plea. Petitioner is not entitled to withdraw his guilty plea on his claim of innocence, in light of the fact that petitioner stated under oath at his guilty plea hearing that he was guilty of shooting and killing the victim. *See U.S. v. Young,* 310 Fed. App'x. 784, 793 (6th Cir. 2009). Petitioner's after-the-fact claim of innocence "should not overcome the fact" that petitioner pled guilty before the state trial court and, under oath, explained his role in the crime. *See U.S. v. Graham*, 278 Fed. App'x. 538, 547–48 (6th Cir. 2008).

Petitioner also claims that his plea was involuntary because he was told by counsel that she was unprepared to proceed to trial and that he would be given a more lenient sentence by taking a plea, rather than proceeding to trial and being convicted.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance.

*Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel— not the state—to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable . . . This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland*

standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "a state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Under Michigan law, a conviction for first-degree murder requires a non-parolable life sentence, whereas a conviction of second-degree murder is parolable. *See Perkins v. LeCureux*, 58 F.3d 214, 216 (6th Cir. 1995). Petitioner's trial attorney negotiated a plea agreement whereby petitioner was able to plead guilty to a reduced charge of second-degree murder, which eliminated the very real risk of petitioner being convicted of first-degree murder at trial and spending the rest of his life in prison. Petitioner received a sentence of twenty-two years and six months to forty years in prison on the second-degree murder conviction.

While petitioner alleges that he was coerced by counsel's claim that he could receive life in prison if convicted after a trial, "accurate information regarding the

-16-

possible ramifications of proceeding to trial cannot be construed as coercive . . . Rather, it is exactly the kind of accurate information regarding sentencing exposure which the defendant must have in order to make an informed decision about whether to accept a plea offer." *U.S. v. Green,* 388 F. 3d 918, 923 (6th Cir. 2004).

Petitioner claims that the victim committed suicide when she took his gun off a table and shot herself. The record reflects that 10–12 gunshots were found in the walls of petitioner's home, that petitioner left the state after the shooting, told his traveling companion that his girlfriend shot herself in front of him, and left her body in the house. Based on the evidence, counsel's representation that petitioner could face life imprisonment was an accurate assessment of the risk of proceeding to trial.

While petitioner claims that counsel was unprepared to proceed to trial, the record clearly reflects that petitioner moved for an adjournment on his four prior trial dates and did not file for an adjournment on the fifth and final trial date. The record also reflects that petitioner indicated on the record that he was satisfied with counsel's representation when he entered the plea (Tr. 9/25/2012, p. 8), and that he preferred to proceed with counsel at sentencing when another attorney appeared with a motion to withdraw his plea. (Tr. 11/5/2012, pp. 4–8). There is no record support that counsel was unprepared to proceed to trial or of petitioner's desire to proceed to trial on a first-degree murder charge as opposed to taking the plea.

Petitioner is not entitled to habeas relief. His claims are meritless.

## V. CONCLUSION

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith*, 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002).

## VI. O<span>RDER</span>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED.**

Dated:       August 31, 2016

                                       s/Gershwin A. Drain
                                       HON. GERSHWIN A. DRAIN
                                       United States District Court Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 31, 2016 August 31, 2016.

                                       s/Teresa McGovern
                                       TERESA MCGOVERN
                                       Case Manager Generalist